# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS KANSAS CITY DIVISION

| | |
|---|---|
| American Alliance for Equal Rights,<br>*Plaintiff*,<br>v.<br>Mountain Plains Minority Supplier Development Council; National Minority Supplier Development Council,<br>*Defendants*. | Case No. 2:26-cv-02126-JWB-JBW<br>(Oral Argument Requested) |

# OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ..... iii
Introduction ..... 1
Background ..... 2
Legal Standard ..... 4
Argument ..... 6
I. The Court has personal jurisdiction and venue. ..... 6
A. The Court has personal jurisdiction over the National Council. ..... 6
B. Venue is also proper. ..... 13
II. The amended complaint plausibly alleges standing. ..... 15
III. The amended complaint plausibly alleges violations of §1981. ..... 20
A. The MBE program involves contracts. ..... 20
B. Mountain Plains is liable under §1981. ..... 22
C. The First Amendment does not immunize Defendants' discriminatory conduct. ..... 24
Conclusion ..... 28
Certificate of Service ..... 28

# TABLE OF AUTHORITIES

**Cases**

*7241 W. 100th Place Corp. v. Bridgeview*,
2014 WL 517961 (N.D. Ill. Feb. 6) .......... 28

*AAER v. ABA*,
2026 WL 161596 (N.D. Ill. Jan. 21) .......... 2, 5, 6, 16, 17, 18, 19, 21, 22, 23, 27, 28

*AAER v. Fearless Fund*,
103 F.4th 765 (11th Cir. 2024) .......... 1, 4, 16, 17, 18, 19, 20, 21, 22, 24, 25

*AAER v. Fearless Fund*,
2023 WL 6295121 (N.D. Ga. Sept. 27) .......... 19, 20

*AAER v. Founders First*,
2024 WL 3625684 (N.D. Tex. July 31) .......... 1, 16, 26

*AAER v. Sw. Airlines*,
2024 WL 5012055 (N.D. Tex. Dec. 6) .......... 16

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998) .......... 26

*Am. v. Tex. Comptroller of Pub. Accts.*,
2025 WL 3853316 (E.D. Tex. Dec. 12) .......... 1

*Ass'n of Christian Schs. Int'l v. Stearns*,
362 F. App'x 640 (9th Cir. 2010) .......... 16

*Ass'n of Christian Schs. Int'l v. Stearns*,
678 F. Supp. 2d 980 (C.D. Cal. 2008) .......... 16

*Barfield v. Commerce Bank*,
484 F.3d 1276 (10th Cir. 2007) .......... 22

*Berk v. Choy*,
607 U.S. 187 (2026) .......... 5, 6

*Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*,
102 F.3d 453 (10th Cir. 1996) .......... 11

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983) .......... 26

*Bruni v. Pittsburgh*,
824 F.3d 353 (3d Cir. 2016) .......... 28

*Budde v. Ling-Temco-Vought, Inc.*,
511 F.2d 1033 (10th Cir. 1975) .......... 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 7, 10

*Carney v. Adams*,
592 U.S. 53 (2020) .......... 19

*Carney v. Okla. Dep't of Pub. Safety*,
875 F.3d 1347 (10th Cir. 2017) ........ 26

*Christian Lab. Ass'n v. Duluth*,
2021 WL 2783732 (D. Minn. July 2) ........ 19

*Citizens Coal Council v. Matt Canestrale Contr.*,
40 F. Supp. 3d 632 (W.D. Pa. 2014) ........ 20

*Convertino v. DOJ*,
684 F.3d 93 (D.C. Cir. 2012) ........ 5

*Daniels v. Pipefitters' Ass'n Loc. Union No. 597*,
945 F.2d 906 (7th Cir. 1991) ........ 23, 24

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
158 F.4th 732 (6th Cir. 2025) ........ 16

*Do No Harm v. NAEMT*,
2025 WL 973614 (S.D. Miss. Mar. 31) ........ 17, 18

*Doe v. Kamehameha Schs.*,
295 F. Supp. 2d 1141 (D. Haw. 2003) ........ 26

*Domino's Pizza v. McDonald*,
546 U.S. 470 (2006) ........ 21, 23

*Dudnikov v. Chalk & Vermilion Fine Arts*,
514 F.3d 1063 (10th Cir. 2008) ........ 4, 5, 6, 8, 9

*Emps. Mut. Cas. Co. v. Bartile Roofs*,
618 F.3d 1153 (10th Cir. 2010) ........ 10, 14, 15

*Etienne v. Wolverine Tube*,
12 F. Supp. 2d 1173 (D. Kan. 1998) ........ 14

*Factory Mut. Ins. Co. v. Flender Corp.*,
2025 WL 1810064 (D. Kan. June 30) ........ 4

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*,
959 F.2d 170 (10th Cir. 1992) ........ 13

*Fernandez v. Clean House, LLC*,
883 F.3d 1296 (10th Cir. 2018) ........ 27

*Fin. & Mktg. Ass'n Int'l v. He-Ro Grp.*,
975 F. Supp. 1429 (D. Kan. 1997) ........ 14

*Fitzgerald v. Mountain States Tel. & Tel. Co.*,
68 F.3d 1257 (10th Cir. 1995) ........ 14

*Flood v. ClearOne Commc'ns, Inc.*,
618 F.3d 1110 (10th Cir. 2010) ........ 22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 7, 8, 9, 10

*Freedom Transportation v. Navistar Int'l Corp.*,
2019 WL 4689604 (D. Kan. Sept. 26) ........ 11

*GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*,
700 F. App'x 865 (10th Cir. 2017) ........ 13

*Giannavola v. Lee*,
2025 WL 1932020 (W.D.N.Y. July 14) ........ 27

*Goodman v. Lukens Steel Co.*,
482 U.S. 656 (1987) ........ 8

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ........ 16, 17, 18

*Greene v. Mizuho Bank, Ltd.*,
289 F. Supp. 3d 870 (N.D. Ill. 2017) ........ 10

*Guarini v. Doe*,
634 F. Supp. 3d 1100 (S.D. Fla. 2022) ........ 12

*Hall v. San Francisco*,
2017 WL 5569829 (N.D. Cal. Nov. 20) ........ 18, 19

*Hancock v. AT&T Co.*,
701 F.3d 1248 (10th Cir. 2012) ........ 15

*Harris v. Allstate Ins. Co.*,
300 F.3d 1183 (10th Cir. 2002) ........ 22, 24

*Hassan v. Iowa*,
2012 WL 12974068 (S.D. Iowa Apr. 26) ........ 18

*Hassan v. Iowa*,
493 F. App'x 813 (8th Cir. 2012) ........ 18

*Hood v. Am. Auto Care*,
21 F.4th 1216 (10th Cir. 2021) ........ 4, 9, 10, 11

*Jackson v. Integra Inc.*,
952 F.2d 1260 (10th Cir. 1991) ........ 5

*Jam v. Int'l Fin. Corp.*,
139 S.Ct. 759 (2019) ........ 21

*Jarmon v. Pac. Rail Servs.*,
2007 WL 678644 (D. Colo. Mar. 1) ........ 22

*Jones v. Schneiderman*,
974 F. Supp. 2d 322 (S.D.N.Y. 2013) ........ 28

*Kousisis v. United States*,
605 U.S. 114 (2025) ........ 1

*Landscape Consultants of Texas, Inc. v. City of Houston*,
2026 WL 2170880 (S.D. Tex. July 28) ........ 1

*Lange v. Lumbermens Mut. Cas. Co.*,
2000 WL 1146127 (D. Kan. July 28) .......... 5

*Larsen v. U.S. Navy*,
486 F. Supp. 2d 11 (D.D.C. 2007) .......... 17

*Lichtenstein v. Hargett*,
83 F.4th 575 (6th Cir. 2023) .......... 26

*Luethje v. Kyle*,
131 F.4th 1179 (10th Cir. 2025) .......... 5

*Maestas v. Lujan*,
351 F.3d 1001 (10th Cir. 2003) .......... 4

*Marcus Food Co. v. DiPanfilo*,
671 F.3d 1159 (10th Cir. 2011) .......... 13

*Merchants Nat. Bank v. Safrabank (Calif.)*,
776 F. Supp. 538 (D. Kan. 1991) .......... 14, 15

*Michelson v. Digital Fin. Servs.*,
167 F.3d 715 (1st Cir. 1999) .......... 22

*Morse v. Regents of U.C.*,
154 F.3d 1124 (10th Cir. 1998) .......... 6

*Muscogee (Creek) Nation v. Oklahoma T.C.*,
611 F.3d 1222 (10th Cir. 2010) .......... 5

*MVT Servs., LLC v. Great W. Cas. Co.*,
2019 WL 2287710 (D.N.M. May 29) .......... 14

*Nat'l Ass'n for Gun Rts. v. Polis*,
173 F.4th 1317 (10th Cir. 2026) .......... 16

*NCAA v. Califano*,
622 F.2d 1382 (10th Cir. 1980) .......... 20

*Near v. Crivello*,
673 F. Supp. 2d 1265 (D. Kan. 2009) .......... 11

*Newman v. Piggie Park Enters.*,
390 U.S. 400 (1968) .......... 24

*Nielsen v. Preap*,
586 U.S. 392 (2019) .......... 26

*Norwood v. Harrison*,
413 U.S. 455 (1973) .......... 25

*Nuziard v. MBDA*,
676 F. Supp. 3d 473 (N.D. Tex. 2023) .......... 16

*Okla. ex rel. Edmondson v. Pope*,
516 F.3d 1214 (10th Cir. 2008) .......... 27

*OpenLCR.com, Inc. v. Rates Tech., Inc.*,
112 F. Supp. 2d 1223 (D. Colo. 2000) .......... 14

*Peay v. BellSouth Med. Assistance Plan*,
205 F.3d 1206 (10th Cir. 2000) .......... 14

*Posner v. Essex Ins. Co.*,
178 F.3d 1209 (11th Cir. 1999) .......... 12

*Pro Axess v. Orlux Distrib.*,
428 F.3d 1270 (10th Cir. 2005) .......... 12

*Pyle v. Woods*,
874 F.3d 1257 (10th Cir. 2017) .......... 27

*R.A.V. v. St. Paul*,
505 U.S. 377 (1992) .......... 24, 25

*Reno v. Flores*,
507 U.S. 292 (1993) .......... 26

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) .......... 26

*Rumsfeld v. FAIR*,
547 U.S. 47 (2006) .......... 24, 25

*Runyon v. McCrary*,
427 U.S. 160 (1976) .......... 2, 24, 25

*Schramm v. Oakes*,
352 F.2d 143 (10th Cir. 1965) .......... 13

*SFFA v. Harvard*,
600 U.S. 181 (2023) .......... 15, 19, 20

*Shea v. Kerry*,
796 F.3d 42 (D.C. Cir. 2015) .......... 17

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011) .......... 5, 9, 12, 13

*Siegel v. Zoominfo Techs.*,
2021 WL 4306148 (N.D. Ill. Sept. 22) .......... 27

*Sizova v. Nat. Inst. of Standards & Tech.*,
282 F.3d 1320 (10th Cir. 2002) .......... 12, 13

*Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*,
174 F.4th 1235 (10th Cir. 2026) .......... 25, 28

*Speech First v. Shrum*,
92 F.4th 947 (10th Cir. 2024) .......... 18

*Tagami v. City of Chicago*,
875 F.3d 375 (7th Cir. 2017) .......... 28

*Taylor v. Phelan*,
912 F.2d 429 (10th Cir. 1990) ........ 5, 6, 9, 11, 12

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ........ 13

*Triple AAA Ass'n for Child. with Developmental Disabilities v. Del Taco*,
2007 WL 9776739 (S.D. Cal. Feb. 26) ........ 18

*U.S. ex rel. Champion Lumber Co. v. Fisher*,
227 U.S. 445 (1913) ........ 27

*UAW v. Brock*,
477 U.S. 274 (1986) ........ 20

*uBID, Inc. v. GoDaddy Grp., Inc.*,
623 F.3d 421 (7th Cir. 2010) ........ 7

*Ultima Servs. Corp. v. USDA*,
683 F. Supp. 3d 745 (E.D. Tenn. 2023) ........ 1

*United States v. Blewett*,
746 F.3d 647 (6th Cir. 2013) ........ 26

*United States v. O'Brien*,
391 U.S. 367 (1968) ........ 26

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ........ 16

*Vasquez-Garcia v. Centurion, LLC*,
172 F.4th 1150 (10th Cir. 2026) ........ 21

*Watson v. Fraternal Ord. of Eagles*,
915 F.2d 235 (6th Cir. 1990) ........ 23

*Wisconsin v. Mitchell*,
508 U.S. 476 (1993) ........ 24

*XMission, L.C. v. PureHealth Rsch.*,
105 F.4th 1300 (10th Cir. 2024) ........ 7, 8, 9, 10

**Statutes**

28 U.S.C. §1391 ........ 14

42 U.S.C. §1981 ........ 20, 21

Kan. Stat. §60-308 ........ 6, 11

**Federal Rules and Regulations**

Fed. R. Civ. P. 5.1 ........ 27

Fed. R. Civ. P. 56 ........ 5

Fed. R. Civ. P. 9 ........ 17, 18

**Other Authorities**

AAER, *Our Cases* (archived Aug. 7, 2026), perma.cc/J764-W8KQ ........................................................1

Doc.16, *AAER v. Am. Airlines*, No. 25-125 (N.D. Tex. May 16, 2025) ..................................................1

Doc.17, *AAER v. Jopwell*, No. 24-1142 (D. Del. Dec. 19, 2024) ............................................................1

Doc.9, *AAER v. Hidden Star*, No. 24-128 (W.D. Tex. Feb. 25, 2024) .....................................................1

Mo. Exec. Order No. 25-18 §§I-II (Feb. 18, 2025).........................................................................................1

Restatement (Second) of Agency (1958)........................................................................................ 11, 22

Volokh, *The First Amendment and Refusals to Deal*, 54 U. Pac. L. Rev. 732 (2023)...................................25

Wright & Miller, Fed. Prac. & Proc. §1352 (2004).......................................................................................15

# INTRODUCTION

For too long, too many have awarded preferences to businesses based on their owners' skin color. These "diversity" programs prefer businesses that are at least 51% owned and operated by "minority" races. Though perhaps well-intentioned, these programs do not help minorities. Dishonest companies take advantage of them by manipulating their ownership structure, while honest companies that serve minorities, or that come just under the arbitrary racial cutoff, are excluded entirely. *See Kousisis v. United States*, 605 U.S. 114, 143 (2025) (Thomas, J., concurring).

Especially after *SFFA v. Harvard*, these race-based programs are starting to end. One of the largest and most prominent, run by the federal Small Business Administration, was declared unconstitutional. *See Ultima Servs. Corp. v. USDA*, 683 F. Supp. 3d 745, 774-75 (E.D. Tenn. 2023). States like Texas and Missouri have started shuttering their programs voluntarily. *See Am. v. Tex. Comptroller of Pub. Accts.*, 2025 WL 3853316, at *1 (E.D. Tex. Dec. 12); Mo. Exec. Order No. 25-18 §§I-II (Feb. 18, 2025). And the City of Houston just had its program shuttered involuntarily. *See Landscape Consultants of Tex. v. Houston*, 2026 WL 2170880, at *14 (S.D. Tex. July 28). The plaintiff here, the American Alliance for Equal Rights, has brought successful litigation against a host of similar programs run by private corporations, ending the race-based supplier program of American Airlines; the race-based directory of Jopwell; the race-based business grants of Fearless Fund, Founders First, Hidden Star; and much more. *AAER v. Am. Airlines*, Doc.16, No. 25-125 (N.D. Tex. May 16, 2025); *AAER v. Jopwell*, Doc.17, No. 24-1142 (D. Del. Dec. 19, 2024); *AAER v. Fearless Fund*, 103 F.4th 765 (11th Cir. 2024); *AAER v. Founders First*, 2024 WL 3625684, at *5 (N.D. Tex. July 31); *AAER v. Hidden Star*, Doc.9, No. 24-128 (W.D. Tex. Feb. 25, 2024). *See generally* AAER, *Our Cases* (archived Aug. 7, 2026), perma.cc/J764-W8KQ.

One of the defendants here, the National Minority Supplier Development Council, is one of the few remaining—and the largest—facilitators of these race-based business programs. Through its

regional affiliates, the National Council charges businesses a fee to certify them as a minority-owned business—a certification that the businesses then use to unlock valuable contracting opportunities. Though Defendants are not themselves government contractors, they are engaged in racially discriminatory contracting themselves; and 42 U.S.C. §1981 bans racial discrimination in contracting by public and private actors alike. By refusing to work with white-owned businesses, including several of the Alliance's members, Defendants are committing "'a classic violation of §1981.'" *AAER v. ABA*, 2026 WL 161596, at *6 (N.D. Ill. Jan. 21) (quoting *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)).

Defendants' motions to dismiss give this Court no reason to think their blatant discrimination is lawful, let alone a reason to dismiss this case against either defendant before discovery. The Court concededly has personal jurisdiction over the National Council's Kansas agent, and it has personal jurisdiction over the National Council because the Alliance's claims arise out of that defendant's Kansas contacts. The Alliance has associational standing because Owners A and B tried to apply to Defendants' program before, are flatly ineligible based on race, and are able and ready to apply again once a court orders Defendants to make the program equally open to all. That program violates §1981 because it's a classic contract—money in exchange for services—that concededly discriminates by barring all white-owned businesses. And the notion that the First Amendment shields racial discrimination in contracting has long been rejected by the Supreme Court.

This Court should deny Defendants' motions to dismiss.

## BACKGROUND

In 1972, the National Council started the Minority Business Enterprise certification program. *See* Verif.-Compl. (Doc.27) ¶21. That program charges an annual fee in exchange for an MBE certificate, proprietary data, exclusive contracting opportunities, and more. ¶¶30-36, ¶53. But not all races can apply: To be eligible for MBE certification, racial "[m]inorities must own and control at least 51%

of the business"—a racial bar that the Council and its affiliates have repeatedly reiterated. *E.g.*, ¶24, ¶26, ¶27, ¶28, ¶29, ¶41, ¶46.

Though the National Council operates in every part of the country through its regional affiliates, it has long operated in—and specifically targeted—Kansas. ¶15. In 2014, the National Council intentionally restructured its "regional affiliates" so that they would target Kansas, directing Mountain Plains to serve Kansas, Western Missouri, and a few other States. App.81; Verif.-Compl. ¶15(A). To promote the MBE certification program, the National Council advertises its certification to Kansas-based businesses. App.21-23; Verif.-Compl. ¶15(B)-(C). It solicits Kansas-based companies. App.12-14; Verif.-Compl. ¶15(D). It visits their Kansas-based job sites. App.101-02; Verif.-Compl. ¶15(E). It catalogues their economic impact after certifying them. App.46, 50, 133, 135; Verif.-Compl. ¶15(F). And it offers its certification to Kansas governments that want to contract with MBEs. App.142-43; Verif.-Compl. ¶15(G).

When running its Kansas-based operations, the National Council works through its Kansas-based affiliate, Mountain Plains, which it "supervises and controls." Verif.-Compl. ¶17(B) (cleaned up); App.174. Mountain Plains has an office in Kansas. App.76; Verif.-Compl. ¶¶11-12. It oversees the MBE program in Kansas. App.81; Verif.-Compl. ¶12. It has certified scores of Kansas-based MBEs. Anderson-Decl. ¶8(h); App.87-89; Verif.-Compl. ¶12. And when Mountain Plains certifies those MBEs, it carefully follows the Council's "certification policy and procedures," thus ensuring that every MBE applicant meets the program's race-based criteria. Verif.-Compl. ¶17(E); App.276.

Owner A has a Kansas-area business and wants to get the benefits of Defendants' certification. Verif.-Compl. ¶39. He applied for an MBE certificate a few months ago. ¶16, ¶40. When he did, Owner A applied through Mountain Plains' Kansas-based office, which serves Kansas City applicants. ¶16, ¶40. But after Owner A submitted his pre-qualification application, Defendants blocked him from the program because his business wasn't "at least 51% ethnic minority owned" or "managed."

¶16(A), ¶¶40-41. Owner A remains "ready and able" to apply for an MBE certification again, as soon as a court orders Defendants to stop discriminating. ¶43.

The Alliance brings this lawsuit on behalf of its members, including Owner A and another business owner, B, who owns a business in Ohio and was similarly blocked from seeking an MBE certification. The Alliance alleges that the MBE certification violates 42 U.S.C. §1981, a federal law that "'prohibits intentional race discrimination in the making and enforcement of public and private contracts.'" *Fearless*, 103 F.4th at 775. Defendants have each separately moved to dismiss. *See* NMSDC-MTD (Doc.33); MP-MTD (Doc.31). With the Court's leave, Doc.40, the Alliance now responds to the motions together.

## LEGAL STANDARD

Defendants' motions challenge personal jurisdiction under Rule 12(b)(2), standing under Rule 12(b)(1), and the merits under Rule 12(b)(6). Though Defendants do not discuss or honor the nuances, these challenges differ in important ways.

For personal jurisdiction, a motion to dismiss can be "facial" or "factual." A facial challenge tests whether the complaint plausibly alleges personal jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). A factual challenge tests whether personal jurisdiction actually exists, typically by attaching outside evidence that tries to disprove the complaint's allegations. *Id.* Because the National Council introduced two "declarations" to rebut personal jurisdiction, it is mounting a "factual" challenge. *Factory Mut. Ins. Co. v. Flender Corp.*, 2025 WL 1810064, at *1 (D. Kan. June 30); *see* Cravins-Decl. (Doc.33-1) ¶¶5-11, ¶15. Factual challenges to personal jurisdiction are allowed, but important procedural guardrails apply. This Court must reject the Council's challenge if the Alliance makes "a prima facie showing of personal jurisdiction," *Hood v. Am. Auto Care*, 21 F.4th 1216, 1220 (10th Cir. 2021), which is less than "a preponderance," *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 n.4 (10th Cir. 2008). And when assessing whether the Alliance meets that standard, the Court

must accept all the Alliance's evidence as true (including its verified complaint, which counts as a declaration), *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011), and resolve "all factual disputes" in the Alliance's "favor," *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). The Court can, however, resolve the challenge on the paper evidence alone, without a hearing or live testimony. *Dudnikov*, 514 F.3d at 1069.

For standing, a motion to dismiss can likewise be facial or factual; but Defendants raise only a facial challenge here. They do not introduce or cite any outside evidence contesting the Alliance's standing. *See* NMSDC-MTD 7-10; MP-MTD 3-8. Their challenge is "facial" because it tries to test whether the complaint alone plausibly alleges "Article III standing." *ABA*, 2026 WL 161596, at *3. Facial challenges to standing are assessed under the normal pleading standards—"the same standards" that govern Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). *Muscogee (Creek) Nation v. Okla. T.C.*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010); *ABA*, 2026 WL 161596, at *3.

For the merits and Rule 12(b)(6), there is no such thing as a factual challenge. Courts are limited to the four corners of the complaint and must ignore any "outside" evidence, *Berk v. Choy*, 607 U.S. 187, 193 (2026)—including Defendants' declarations, *cf.* MP-MTD 1-2, 9, 13-15; NMSDC-MTD 14. With narrow exceptions for materials incorporated into the complaint, *see Luethje v. Kyle*, 131 F.4th 1179, 1188-89 & n.4 (10th Cir. 2025), the Court cannot consider outside materials at all, *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991); *Lange v. Lumbermens Mut. Cas. Co.*, 2000 WL 1146127, at *2 n.1 (D. Kan. July 28)—at least not without converting the motion into one for summary judgment, which would not help Defendants here because summary judgment before any discovery would be "premature." *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012); *see* Fed. R. Civ. P. 56(d); Anderson-Decl. ¶¶6-7. The Court instead accepts the complaint's allegations as true, construing everything and drawing "all reasonable inferences" in the Alliance's favor. *Morse v. Regents of U.C.*, 154 F.3d 1124, 1126 (10th Cir. 1998); *ABA*, 2026 WL 161596, at *3. The Court must deny Defendants' motions if the

verified complaint plausibly alleges a violation of the law—a standard that's "relatively easy" to meet. *Berk*, 607 U.S. at 194.

# ARGUMENT

Collectively, Defendants make three main arguments. Mountain Plains concedes personal jurisdiction and venue, but the National Council challenges both as to it alone. Both Defendants challenge Plaintiff's standing, though several of their arguments have since been withdrawn. *See* Doc.42. And both Defendants say the Alliance failed to state a claim under §1981, with Mountain Plains adding that its role in the challenged program is too insignificant to make it liable. These arguments all fail.

## I. The Court has personal jurisdiction and venue.

The National Council, but not Mountain Plains, challenges personal jurisdiction and venue. The National Council is incorrect on both. Nor should it be surprising that the National Council—having decided to set up shop through regional affiliates and then discriminate against businesses across the country—can be sued in many places. It can especially be sued in States, like Kansas, where its regional affiliates have physical offices.

### A. The Court has personal jurisdiction over the National Council.

Because Kansas's long-arm statute is coextensive with the Constitution, *Taylor*, 912 F.2d at 431 n.3; Kan. Stat. §60-308(b)(1)(L), the Court has personal jurisdiction over the National Council if exercising that authority satisfies "constitutional due process." *Dudnikov*, 514 F.3d at 1070; *cf.* NMSDC-MTD 3. Due process is satisfied here for two independent reasons: Owner A's injuries arise out of the Council's contacts with Kansas; and the Court has personal jurisdiction over Mountain Plains, the Council's agent. If any doubts remain, the Court cannot deny personal jurisdiction at this stage before the Alliance gets jurisdictional discovery.

**1.** The Court has personal jurisdiction over the National Council if it "purposefully" directs its activities at Kansas, the Alliance's claims "arise out of or relate to" the Council's Kansas contacts,

and personal jurisdiction is otherwise fair. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 & 362 (2021) (cleaned up). All are true here.

**A.** Courts in this circuit ask whether a defendant "has purposefully directed its activities" at a State by applying three main "frameworks." *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1309 (10th Cir. 2024). Those frameworks find purposeful direction when:

> i. the defendant has "continuing relationships with forum state residents";
> ii. the defendant continuously and deliberately "exploit[s] the forum state market"; or
> iii. the defendant's conduct has significant "harmful effects in the forum state."

*PureHealth Rsch.*, 105 F.4th at 1309 n.9. Personal jurisdiction is met when any one of these three frameworks are satisfied. *Id.* at 1309-10 & n.9. The National Council satisfies all three.

**i.** The Council's contacts with Kansas pass the first test. To satisfy the continuing-relationships test, the Council must "deliberately" reach outside New York and enter "a contractual relationship centered" in Kansas. *Ford*, 592 U.S. at 359; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). It did. The Council has entered hundreds of contracts in Kansas and its neighboring States, contracting with more than "500 minority-owned businesses" in that region—including "dozens" of businesses "that are headquartered in Kansas." Verif.-Compl. ¶12, ¶15(B), ¶15(F); App.50, 80. The Council "intentionally targets Kansas" at every stage of the MBE process, "advertising to Kansas-based businesses, recruiting those businesses, and visiting their Kansas-based job sites" before the process is complete. Verif.-Compl. ¶15(A)-(H) (cleaned up); App.6, 12-14, 21-23, 91-92; *contra* NMSDC-MTD 4. And the Council has entrenched its Kansas connections by executing a "carefully" structured deal with Mountain Plains "that envision[s] continuing and wide-reaching contacts" throughout the State. *Burger King*, 471 U.S. at 479-80; *see* App.81, 91-92; Verif.-Compl. ¶15(A)-(B), ¶16.

**ii.** The National Council satisfies the second test too: the market-exploitation test. It has "continuously and deliberately exploited" the State's markets. *Ford*, 592 U.S. at 364; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427-29 (7th Cir. 2010). For decades, the Council has continuously operated

its MBE program in Kansas, deliberately restructuring its "regional affiliates" to "service Kansas" and the State's market for MBE certifications. Verif.-Compl. ¶15(A)-(B) (cleaned up); App.6, 46, 81, 133. And its services in Kansas have been substantial: Throughout its time here, the National Council has helped certify scores of businesses that employ thousands of Kansans and that generate "billion[s] in revenue." Verif.-Compl. ¶10, ¶15(F); App.50. When the Council works with those businesses, it "enjoys the benefits and protection" of Kansas's markets, *Ford*, 592 U.S. at 367—especially in parts of the State where "some local governments only accept MBE certificates from [the Council's] regional affiliates and a few other organizations." Verif.-Compl. ¶15(G); App.142-43; Cravins-Decl. ¶11. Given all those benefits, the Council "has never severed its connections" with Kansas—nor shed the legal privileges that those connections carry. Verif.-Compl. ¶15(H); *Ford*, 592 U.S. at 363-64. The Council has deliberately "exploit[ed]" Kansas's markets by serving the state's MBE certification "market" and conducting "substantial business" throughout the State. *Ford*, 592 U.S. at 359-61; App.50; Verif.-Compl. ¶10, ¶15(F)-(G).

**iii.** If that weren't enough, the National Council satisfies the third test as well. Under the harmful-effects test, the Alliance "meets its *prima facie* burden" if the Council's "intentional conduct targets and has substantial harmful effects" in Kansas. *PureHealth*, 105 F.4th at 1309 & 1312. It does. The Council intentionally targets Kansas through advertising, certification, recruiting, conducting site visits, hosting MBE events, operating through Mountain Plains, and more. *E.g.*, Verif.-Compl. ¶15(A)-(H), ¶17(A)-(F); App.6, 12-14, 80-81; *Dudnikov*, 514 F.3d at 1072. That intentional conduct has substantially harmed the State and its residents, blocking countless Kansans from contracts because of their race and committing a "fundamental injury to the[ir] individual rights." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987); Verif.-Compl. ¶16(A), ¶¶24-26; App.101-02. The Council's online MBE platform, which "specifically solicits Kansas City businesses," Verif.-Compl. ¶15(D), ¶41; App.12-14,

independently satisfies the harmful-effects test because it's "directed specifically" at Kansans, making the State "the focal point of [its] message," *Shrader*, 633 F.3d at 1244; *PureHealth*, 105 F.4th at 1310.

The National Council's motion never engages with any of those tests. It says its website "does not establish purposeful availment," NMSDC-MTD 4; but the website does because it "deliberately direct[s] its message" at Kansans. *PureHealth*, 105 F.4th at 1310. The Council says it does not conduct "site visits" in Kansas, NMSDC-MTD 4; but the Alliance's evidence contradicts that conclusion, *see* Verif.-Compl. ¶15(E); App.101, and the Court must resolve that dispute in the Alliance's "favor," *Taylor*, 912 F.2d at 431. Finally, the Council says a Kansas county's "decision to accept MBE certificates" doesn't prove purposeful availment, NMSDC-MTD 5; Cravins-Decl. ¶11; but that state "assistance to [the Council]'s in-state business" is strong evidence that the Council "continuously and deliberately exploited [Kansas's] market," *Ford*, 592 U.S. at 364 & 367-68. Because the National Council has long enjoyed "the privilege of conducting activities" in Kansas, this Court can "hold [it] to account" for its discriminatory conduct here. *Id.* at 360; *Dudnikov*, 514 F.3d at 1078.

**B.** The Alliance's claims "arise out of or relate to" the National Council's Kansas contacts. *Ford*, 592 U.S. at 359; *Hood*, 21 F.4th at 1222. A plaintiff's claim "arise[s] out" of a defendant's forum-state contacts if there's "some sort of causal connection between [those] contacts and the suit at issue." *PureHealth*, 105 F.4th at 1312. And here, the challenged MBE program injured—and continues to injure—one of the Alliance's members in Kansas. *E.g.*, Verif.-Compl. ¶16(A)-(B), ¶18, ¶¶38-43. The Council sets and executes the MBE certification's race-based criteria through Mountain Plains' Kansas office. Verif.-Compl. ¶15(B), ¶15(D), ¶17(E), ¶¶24-25; App.6, 12-14, 101-02; Cravins-Decl. ¶18. Owner A tried to get an MBE certification through that Kansas office, but Defendants "blocked him from the program" because his business didn't meet the Council's race-based criteria. Verif.-Compl. ¶16(A), ¶¶40-42. And Owner A still cannot apply through the Council's Kansas-specific MBE platform. ¶16, ¶¶41-43. The National Council's Kansas contacts thus satisfy the arising-out-of test because

each is the "but-for" cause of Owner A's injuries and all are "relevant to the merits of the [Alliance's] action." *Emps. Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d 1153, 1161 (10th Cir. 2010); *PureHealth*, 105 F.4th at 1313. The Council must agree: Even though it "mak[es] other arguments against personal jurisdiction," it never argues that the Alliance's injuries do not arise out of the Council's Kansas contacts—thus "resulting in a forfeiture" of this point. *Greene v. Mizuho Bank*, 289 F. Supp. 3d 870, 876 (N.D. Ill. 2017); *PureHealth Rsch.*, 105 F.4th at 1307 ("Personal jurisdiction … may be waived or forfeited.").

Alternatively, the Alliance's claims "relate to" the Council's Kansas contacts for all the same reasons—plus a few more. *Ford*, 592 U.S. at 359-60. "[T]he phrase 'relate to' is a broad one," *id.* at 374 (Alito, J., concurring), and the Alliance falls within it if there's "'an affiliation between [Kansas] and the underlying controversy,'" *id.* at 362-63 (majority). There's a strong affiliation here, as the Alliance just explained. That affiliation is stronger still because Owner A does business in Kansas, competes against MBE-certified companies in Kansas, and "would use his MBE certification in Kansas." Verif.-Compl. ¶16(C), ¶18. And the Council has long "served a market" in Kansas "for the very [MBE certification] that … injured"—and continues to injure—Owner A. *Hood*, 21 F.4th at 1224-25; *Ford*, 592 U.S. at 365; App.6, 11-14, 80-81; Verif.-Compl. ¶15(A)-(H). Those Kansas contacts are the type of "strong relationship" that creates personal jurisdiction, *Ford*, 592 U.S. at 365, so it's no wonder the Council forfeited any contrary claim by failing to brief relatedness too, *Greene*, 289 F. Supp. 3d at 876.

**C.** The Council cannot avoid personal jurisdiction by belatedly claiming that litigating here is unfair. To defeat personal jurisdiction, the Council has the burden to "present a compelling case" that litigating here "does not comport with fair play and substantial justice." *Hood*, 21 F.4th at 1227 (cleaned up). By making no argument in its motion that exercising personal jurisdiction here flouts "fair play and substantial justice," the Council necessarily failed to carry its burden. *Id.*; *Burger King*, 471 U.S. at 477-78. Even if the Council had tried, unfairness findings "are rare"—so rare that the Tenth Circuit and Supreme Court have *never* "relied on an independent assessment of fairness to defeat specific

jurisdiction" against a domestic defendant like the Council. *Hood*, 21 F.4th at 1228 n.7. This Court shouldn't be the first. *Id.* at 1228.

**2.** Alternatively, this Court has personal jurisdiction over the National Council because it has personal jurisdiction over the Council's agent, Mountain Plains. *See Taylor*, 912 F.2d at 434; Kan. Stat. §60-308(b)(1)(A)-(B), (L). "[I]t is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor*, 912 F.2d at 433 (collecting cases); *Near v. Crivello*, 673 F. Supp. 2d 1265, 1272 n.1 (D. Kan. 2009); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996). No one questions that the Court has personal jurisdiction over Mountain Plains based on its activities in Kansas—activities that fall squarely in "the scope" of the parties' principal-agent relationship, *Taylor*, 912 F.2d at 433; *see* Verif.-Compl. ¶7, ¶¶11-12, ¶¶15-16, ¶17(A), ¶18, ¶¶22-29, ¶¶40-43. So the only question is whether Mountain Plains is the National Council's agent. It is.

Agency relationships have two elements—"control" and "consen[t]"—and Defendants' relationship has both. *See Restatement (2d) of Agency* §1, cmt. 1a (1958); *Beverly Kuenzle*, 102 F.3d at 459. The National Council has long said it "'controls'" Mountain Plains. Verif.-Compl. ¶17(B)-(C); App.174; *see Freedom Transp. v. Navistar Int'l Corp.*, 2019 WL 4689604, at *9 (D. Kan. Sept. 26). That control includes making Mountain Plains rigidly follow the MBE "certification policy and procedures." Verif.-Compl. ¶17(D)-(E) (cleaned up); Cravins-Decl. ¶10; Knight-Decl. (Doc.31-1) ¶¶6-7; *see Freedom Transp.*, 2019 WL 4689604, at *9. And the parties mutually consented to that relationship—advertising it, reaffirming it in IRS filings, formalizing it in an affiliate agreement, and more. Verif.-Compl. ¶17(B)-(F); App.174, 236, 240, 271-72; *see Freedom Transp.*, 2019 WL 4689604, at *9. That type of relationship satisfies any principal-agent test—especially in the Tenth Circuit, where courts can "exercise personal jurisdiction over [a] parent" company even if it exercises "significant," but not complete, control over "a subsidiary." *Pro Axess v. Orlux Distrib.*, 428 F.3d 1270, 1278 (10th Cir. 2005).

The National Council cannot dispute the Alliance's evidence of agency. It relies exclusively on the Cravins declaration to claim that Mountain Plains "is not" the Council's "agent." NMSDC-MTD 6. But that faux factual argument doubly fails. For starters, the declaration's assertion—that "Mountain Plains is not an agent of NMSDC," Cravins-Decl. ¶10—is "in substance [a] legal conclusio[n]," which does not count as "evidence" at all, *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999); *Guarini v. Doe*, 634 F. Supp. 3d 1100, 1103 (S.D. Fla. 2022). Even if the Court treated Cravins' naked legal conclusions as a factual assertion, the Alliance submitted contrary evidence, including "verified allegations," that must be weighed in its "favor." *Shrader*, 633 F.3d at 1248; *Taylor*, 912 F.2d at 431.

* * *

Under either or both of these theories, then, the Alliance has established personal jurisdiction over the National Council. But if personal jurisdiction somehow remains in doubt, the Court should defer the question or let the Alliance seek jurisdictional discovery.

A "party should be allowed discovery" when "a defendant moves to dismiss for lack of jurisdiction." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002); *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). And granting jurisdictional discovery is necessary when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Sizova*, 282 F.3d at 1326 (cleaned up).

The Alliance is entitled to seek jurisdictional discovery. The Council disputes many of the most "pertinent" jurisdictional facts, like whether it comes to Kansas to conduct "site visits." *Compare* Verif.-Compl. ¶15(E); App.101, *with* NMSDC-MTD 4-5; *see Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1168 (10th Cir. 2011). The Council also claims that its online platform doesn't "specifically solici[t] Kansas City businesses." *Compare* Verif.-Compl. ¶15(B)-(D); App.12-14, *with* NMSDC-MTD 4; *see Shrader*, 633 F.3d at 1244. Most importantly, the Council says it's not involved in the "day-to-day operational control" of Mountain Plains or its Kansas-based MBE program, *compare* NMSDC-MTD 6, *with* Verif.-Compl. ¶17(A)-(F)—a claim that the Alliance is entitled to test through discovery, *GCIU-Emp. Ret.*

*Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 871 (10th Cir. 2017). And if this Court thinks "a more satisfactory showing of the facts is necessary," *Sizova*, 282 F.3d at 1326, then the Alliance would meet that test too. Importantly, all the contested facts—including the site visits, the solicitations, and the day-to-day control—turn on evidence that's exclusively within the Council's possession. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455-57 (3d Cir. 2003). So the Alliance should at least get a chance to probe the Council's Kansas contacts, including "whether [the Council], either directly or through their owners, directors, or agents, [is] involved in the day-to-day management of [Mountain Plains]" or its Kansas-based MBE program. *GCIU-Emp. Ret. Fund*, 700 F. App'x at 871.

At the very least, the Court should defer its personal-jurisdiction ruling for trial. The Court should defer a ruling on personal jurisdiction when that issue is "dependent upon a decision on the merits." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965). To resolve personal jurisdiction, this Court must decide whether Mountain Plains is the National Council's agent. But to resolve that question, the Court must decide what conduct Mountain Plains engaged in and whether that conduct makes Mountain Plains liable under §1981. Tellingly, the National Council's arguments for why Mountain Plains is not its agent are the same arguments that Mountain Plains makes for why it is not liable under §1981. *Compare* NMSDC-MTD 6, *with* MP-MTD 13-14. Personal jurisdiction thus depends in part on the merits of the Alliance's §1981 claim, so a decision should be reserved for the merits stage of the case. *See Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262-63 (10th Cir. 1995).

### B. Venue is also proper.

The National Council appears to concede that, if the Court has personal jurisdiction over it, then venue is proper. *See* NMSDC-MTD 7. Because this Court has personal jurisdiction over the National Council, *supra* §I.A, venue is proper because both Defendants are "residents" of Kansas, 28 U.S.C. §1391(b)(1). As corporations, Defendants are residents of any State where a district court "can

exercise general or specific jurisdiction" over them. *MVT Servs. v. Great W. Cas. Co.*, 2019 WL 2287710, at *3 (D.N.M. May 29); *OpenLCR.com v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1230 (D. Colo. 2000); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir. 2000). As explained, this Court has specific personal jurisdiction over the National Council. *Supra* §I.A. And Defendants do not dispute the Court's personal jurisdiction over Mountain Plains. *See* Verif.-Compl. ¶¶18-19.

In case it matters, venue would also be proper under §1391(b)(2). A "substantial part of the events" occurred in Kansas. 28 U.S.C. §1391(b)(2). The Alliance's "claims" and "the acts" underlying them occurred in Kansas; as did "substantial events" that were "material to those claims." *Emps. Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d 1153, 1166 (10th Cir. 2010). Owner A applied to the MBE certification "by way of communications directed into Kansas." *Etienne v. Wolverine Tube*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998); *Merchants Nat. Bank v. Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991); *see* Verif.-Compl. ¶16(A)-(B), ¶18. And if Owner A could get an MBE certification, "the place of intended performance" would be Kansas. *Fin. & Mktg. Ass'n Int'l v. He-Ro Grp.*, 975 F. Supp. 1429, 1432 (D. Kan. 1997); *see* Verif.-Compl. ¶18. Those Kansas contacts are "part of the entire sequence of events underlying the [Alliance's] claim," so "venue is proper" here. *Emps. Mut. Cas. Co.*, 618 F.3d at 1167.

Though the National Council says "the creation and enforcement of the MBE Certification criteria … occurred in New York," NMSDC-MTD 7 (citing Cravins-Decl. ¶3, ¶¶5-8), that argument is wrong and immaterial. Wrong because the Cravins declaration doesn't dispute that the Council enforces the MBE program in Kansas, *see* Cravins-Decl. ¶3, ¶¶5-8, and the Court must resolve any conflicting evidence in the Alliance's "favor," *Hancock v. AT&T Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012); Wright & Miller, Fed. Prac. & Proc. §1352, 324 & n.25 (2004) (collecting cases). And the argument is irrelevant because venue is proper under §1391(b)(1) anyway and because, under §1391(b)(2), "venue can be appropriate in more than one district" if substantial events occurred in both places. *Emps. Mut. Cas. Co.*, 618 F.3d at 1166; *Merchants Nat. Bank*, 776 F. Supp. at 541.

It is not strange for a national organization that works with regional affiliates and discriminates against individuals in a region to be sued in that region. It *would be* strange to make the victim (and the regional affiliate) litigate in New York, or to make the victim bring two separate lawsuits against the two defendants for their joint misconduct. Had the Alliance sued Mountain Plains alone in this district—which all concede would pose no problem under personal jurisdiction or venue—surely the National Council would have voluntarily intervened. Its strained challenges to personal jurisdiction and venue seem designed to make the litigation more expensive, not more fair, and should be rejected.

## II. The amended complaint plausibly alleges standing.

The Alliance has associational standing if its members would have standing "in their own right," this case is "germane" to the Alliance's mission, and the Alliance's claims or remedies do not require "the participation of [its] members in the lawsuit." *SFFA v. Harvard*, 600 U.S. 181, 199 (2023). Defendants do not challenge the last two prongs—germaneness and individualized participation. *Id.* Nor could they. The Alliance's challenge to the MBE program's racial and ethnic classifications is germane to its mission of "ending racial and ethnic classifications." Verif.-Compl. ¶6, ¶¶49-57; *see Fearless*, 103 F.4th at 771. And the Alliance's §1981 claims turn on the face of the challenged program and its members' inability to compete, which do not require Owner A and B's participation. *Fearless*, 103 F.4th at 771; *AAER v. Founders First*, 2024 WL 3625684, at *2 (N.D. Tex. July 31). Same for its requests for forward-looking relief, *Fearless*, 103 F.4th at 771, and nominal damages, *AAER v. Sw. Airlines*, 2024 WL 5012055, at *3-4 (N.D. Tex. Dec. 6). In fact, the no-individualized-participation prong is "'solely prudential,'" not jurisdictional. *Id.* at *3; *Ass'n of Christian Schs. Int'l v. Stearns*, 678 F. Supp. 2d 980, 984 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010). So by failing to challenge this third prong in their motions, Defendants forfeit the point at this stage. *Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 741 (6th Cir. 2025) (en banc).

While Defendants challenge "the first prong" of the associational-standing test, NMSDC-MTD 8-10; MP-MTD 4-7, their arguments fail because the Alliance plausibly alleged it has at least "one" member who would have standing to sue on his own, *Nat'l Ass'n for Gun Rts. v. Polis*, 173 F.4th 1317, 1330 (10th Cir. 2026). As Defendants admit, the MBE program outright bars Owners A and B from applying or participating because of their race. *See* Cravins-Decl. ¶3. That "'discriminatory policy'" injures Owners A and B by preventing them from "'compet[ing]'" for contracts on a racially equal basis. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). Defendants are causing those injuries by erecting or enforcing the barrier. *Fearless*, 103 F.4th at 772. And the Court can redress those injuries by ordering Defendants to stop discriminating or to pay nominal damages. *Id.*; *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285-89 & 293 (2021). So the Alliance "'need only'" allege one thing to "'establish standing'": that Owners A and B are or were "able and ready" to apply "should [Defendants] cease to use race." *Gratz*, 539 U.S. at 262; *Fearless*, 103 F.4th at 772.

Owners A and B are "able" to apply to the MBE program because they meet all the "eligibility criteria" aside from the "racial" ones. *ABA*, 2026 WL 161596, at *2, *5; *Nuziard v. MBDA*, 676 F. Supp. 3d 473, 480 (N.D. Tex. 2023). The complaint alleges all the facts showing that they meet the program's few objective criteria, Verif.-Compl. ¶38, ¶44, and Defendants never argue that those allegations are insufficient or that Owners A-B are somehow unqualified.

Owners A and B are also "ready" to apply because they have the requisite "intent." *Gratz*, 539 U.S. at 261-62. Both "tried" to apply to Defendants' program in the past. Verif.-Compl. ¶40, ¶46. Both are "ready" to reapply now. ¶43, ¶45. And both will "immediately" apply again once Defendants stop discriminating. ¶43, ¶47, ¶16(B). Those unequivocal allegations "are more than sufficient" to allege readiness, *Fearless*, 103 F.4th at 774 & n.3—especially at the pleading stage, *ABA*, 2026 WL 161596, at *4-5; *Shea v. Kerry*, 796 F.3d 42, 50-51 (D.C. Cir. 2015). True, the owners allege an intent to reapply only after the Court makes Defendants stop discriminating. *Cf.* MP-MTD 7. But they have no

choice, since Defendants outright bar their applications now based on race. *See* Verif.-Compl. ¶24, ¶26, ¶41, ¶46. And that "conditional intent" is exactly what the binding precedent says is required to be "ready." MP-MTD 7; *see, e.g.*, *Gratz*, 539 U.S. at 261-62.

Though Owner A and B's "intent … may be alleged generally," Fed. R. Civ. P. 9(b), the Alliance supplies a host of specific facts to corroborate its members' readiness, Verif.-Compl. ¶¶16(A)-(C), ¶¶38-43, ¶¶44-47; *cf.* NMSDC-MTD 9; MP-MTD 6-7. The complaint unequivocally alleges that Owners A and B "would immediately apply" if they could, Verif.-Compl. ¶43, ¶47, which would be enough by itself to prove intent even at "summary judgment," *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 20-21 (D.D.C. 2007). But the complaint goes further: It "describe[s]" each owner's business, explains how they "would use" the MBE certification, confirms they're "prepared to enter" the program, and "pinpoint[s]" when they would apply—as soon as possible after a court grants relief. *Fearless*, 103 F.4th at 774; *Do No Harm v. NAEMT*, 2025 WL 973614, at *4-5 (S.D. Miss. Mar. 31); *see* Verif.-Compl. ¶16(C), ¶18, ¶¶38-39, ¶¶44-45. Though a complaint need only plead "'some'" allegations to "demonstrate" readiness, *Fearless*, 103 F.4th at 774 n.3; *Larsen*, 486 F. Supp. 2d at 22, the Alliance's complaint pleads readiness in detail, cataloguing Owner A and B's past applications, present intentions, and how they would re-apply. Verif.-Compl. ¶¶40-43, ¶¶46-47. The Alliance's "request" for forward-looking relief further "corroborate[s]" its members' sincere intentions. *Gratz*, 539 U.S. at 261 & n.14; *cf.* MP-MTD 1, 7. These many, specific allegations go far beyond the "general allegations [of] readiness" that suffice at the pleading stage. *Hassan v. Iowa*, 2012 WL 12974068, at *3 n.4 (S.D. Iowa Apr. 26), *aff'd*, 493 F. App'x 813 (8th Cir. 2012); *Hall v. San Francisco*, 2017 WL 5569829, at *6 (N.D. Cal. Nov. 20).

Defendants do not meaningfully dispute the sufficiency of these allegations. Citing *Carney v. Adams*, Defendants question the "sincerity" of these owners' intent. NMSDC-MTD 9-10; MP-MTD

6-7. And they assert that the Alliance is not a "genuine" membership association. Both arguments fail.*

**1.** Defendants cannot argue that Owners A and B don't actually want to "participate in the MBE Certification program." *Cf.* NMSDC-MTD 10; MP-MTD 6. Defendants cannot challenge the owners' "sincerity" at "the pleading stage"—especially through a "facial attack" on standing. *Triple AAA Ass'n for Child. with Developmental Disabilities v. Del Taco*, 2007 WL 9776739, at *5 (S.D. Cal. Feb. 26); *NAEMT*, 2025 WL 973614, at *3-4. The Court must accept the complaint's allegations as true, which repeatedly state that Owners A and B "sincerely" want "to apply to the program," Verif.-Compl. ¶¶42-43, ¶¶46-47; *NAEMT*, 2025 WL 973614, at *4; *ABA*, 2026 WL 161596, at *4. Intent generally, and sincerity specifically, are mental "conditio[ns]" that can be pleaded "generally." Fed. R. Civ. P. 9(b). But the Alliance did not plead them generally; as explained, it backed these allegations up with many specific details. Indeed, "it is hard to imagine" what else the Alliance "could have done" to allege its members' intent. *ABA*, 2026 WL 161596, at *4; *Fearless*, 103 F.4th at 774.

Defendants get nowhere by invoking *Carney v. Adams*. *Cf.* NMSDC-MTD 9; MP-MTD 4-5. *Carney* is a "summary judgment" case that was decided after discovery; it "does not opine on the pleading standard that applies to The Alliance's amended complaint." *ABA*, 2026 WL 161596, at *4 (distinguishing *Carney*); *accord Christian Lab. Ass'n v. Duluth*, 2021 WL 2783732, at *9 n.12 (D. Minn. July 2); *Hall*, 2017 WL 5569829, at *6. So "measur[ing] the amended complaint's allegations against the evidentiary record in *Carney*" would "be improper." *ABA*, 2026 WL 161596, at *4; *accord Duluth*, 2021 WL 2783732, at *9 n.12. The alleged facts here are nothing like the "highly fact-specific … record evidence" in *Carney*. *ABA*, 2026 WL 161596, at *4; *Fearless*, 103 F.4th at 773-74. Unlike the plaintiff

* Before Defendants withdrew sections of their motions, *see* Doc.42, Defendants argued that the Alliance doesn't have standing because Owners A and B are "pseudonymous." NMSDC-MTD 8-9; MP-MTD 5-6. That argument is foreclosed by the Tenth Circuit's decision in *Speech First v. Shrum*, 92 F.4th 947 (10th Cir. 2024). It is also overtaken by events because, after the parties exchanged initial disclosures, the Alliance disclosed the real names of Owners A and B to Defendants (attorney's eyes only) under the protective order.

in *Carney*, Owners A-B "appl[ied] previously," offered copious "supporting" facts, and provided far more than just a "few words of general intent." 592 U.S. 53, 63-64 (2020). Contra Defendants, *Carney* did "not decide whether a statement of intent alone under other circumstances could be enough to show standing." *Id.* at 64. And it did "not … depart or modify" its "precedents" holding that a plaintiff need not apply at all when doing so would be "'futile.'" *Id.* at 66. As explained, the Alliance alleged much more than intent alone; and its members' applications were demonstrably futile.

**2.** The Alliance is "indisputably" a genuine membership organization. *AAER v. Fearless Fund*, 2023 WL 6295121, at *3 (N.D. Ga. Sept. 27), *aff'd on standing*, 103 F.4th at 771-75; *cf.* MP-MTD 4; NMSDC-MTD 8. As the Supreme Court unanimously agreed in *Harvard*, a membership association need not prove specific "organizational" details. *Cf.* MP-MTD 4; NMSDC-MTD 8. All that matters is that the association "has identified members and represents them in good faith." *Harvard*, 600 U.S. at 200-01. The Alliance has many "identifiable members"—including Owners A and B—and "represents them in good faith." *Fearless*, 2023 WL 6295121, at *3; *see* Verif.-Compl. ¶¶7-8. Though not necessary for standing, the complaint adds that the Alliance is a "validly incorporated" nonprofit recognized as a legitimate 501(c)(3) by the IRS. *Harvard*, 600 U.S. at 201; Verif.-Compl. ¶7. Its members "voluntarily joi[n]," "support" its mission, "receive" regular updates, "pay dues," and offer "input" on cases. Verif.-Compl. ¶8; *Harvard*, 600 U.S. at 201. And though the Alliance does not need to be "controlled and funded" by its members, *Harvard*, 600 U.S. at 200-01, its members do "control" it—after all, there "would be no lawsuit" without them, *Citizens Coal Council v. Matt Canestrale Contr.*, 40 F. Supp. 3d 632, 639 & 643 (W.D. Pa. 2014). That "input" is a hallmark of a genuine membership association, not a source of suspicion. *Cf.* MP-MTD 4-5; NMSDC-MTD 8.

Defendants cannot argue otherwise by plucking allegations from the complaint, ignoring all other allegations, and construing them in the worst possible light. *Cf.* MP-MTD 4-5; NMSDC-MTD 8. The Alliance gets its factual allegations accepted as true at this stage, with all inferences drawn and

constructions made in *its* favor. *NCAA v. Califano*, 622 F.2d 1382, 1388 (10th Cir. 1980). Nothing in the complaint suggests, as Defendants do, that Owners A-B do not truly want "MBE certification." *Cf.* MP-MTD 6-7; NMSDC-MTD 9-10. The complaint consistently alleges the opposite. *E.g.*, Verif.-Compl. ¶39, ¶45; *Fearless*, 2023 WL 6295121, at *3. And though Defendants think it's suspicious that the owners "lack the expertise and resources to bring a lawsuit themselves," MP-MTD 7-8, NMSDC-MTD 8, what Defendants deem suspicious are what the Supreme Court calls the hallmarks of associational standing. Associational standing is "advantageous" precisely because associations "draw upon a pre-existing reservoir of expertise and capital," their preexisting "'interest'" "'sharpens the presentation of issues,'" and they "create an effective vehicle for vindicating interests that [individuals] share with others." *UAW v. Brock*, 477 U.S. 274, 289-90 (1986).

## III. The amended complaint plausibly alleges violations of §1981.

On the merits of §1981, Defendants concede most of the elements. Defendants never deny that §1981 bars racial discrimination in contracting by private actors. 42 U.S.C. §1981(c); *Fearless*, 103 F.4th at 775; Verif.-Compl. ¶50. Defendants never deny that §1981 applies "the same" way to all races. 42 U.S.C. §1981(a); *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019); Verif.-Compl. ¶¶51-52. And Defendants never deny that a defendant violates §1981 if it "blocks" someone from contracting because of race. *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006); Verif.-Compl. ¶54.

Defendants claim that their program involves no contracts that trigger §1981. They deny that Mountain Plains is involved enough with the program to be liable. And they say that, if §1981 applies to their conduct, then the statute violates the First Amendment. Each argument fails.

### A. The MBE program involves contracts.

If Defendants' MBE program is not a contract, it's hard to know what is. Under §1981, "a contract is 'an agreement to do … a particular thing, upon sufficient consideration.'" *Fearless*, 103 F.4th at 775; *ABA*, 2026 WL 161596, at *6. Defendants' MBE program is itself a contract because it charges money in exchange for products and services. Verif.-Compl. ¶30, ¶53, ¶¶2-3. Through it,

Defendants also facilitate other contracting opportunities for participants. ¶12, ¶¶35-36, ¶55. All of these contracts implicate §1981. Defendants' contrary arguments are unpersuasive.

**1.** Defendants cannot argue that the MBE program is a discretionary gift, rather than a "contractual relationship." NMSDC-MTD 13-14. For one, that argument would have the Court impermissibly "disregard" the complaint's allegations. *ABA*, 2026 WL 161596, at *5-7. Nothing in the complaint supports the notion that Defendants have "complete discretion" to award certifications, *cf.* NMSDC-MTD 13-14, so the Court cannot credit Defendants' contrary assertion at this stage, *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1161 (10th Cir. 2026); *ABA*, 2026 WL 161596, at *3. As the Alliance alleges, Defendants are obligated to award MBE certifications whenever an applicant satisfies the eligibility criteria and pays the fee. *E.g.*, Verif.-Compl. ¶¶30-36, ¶¶2-3, ¶38, ¶53, ¶42. So "at this stage," the Court cannot conclude that MBE certifications are just "discretionary gifts." *ABA*, 2026 WL 161596, at *5, *7.

Even if Defendants had the discretion to withhold MBE certifications, the program would still involve contracts. *Cf.* NMSDC-MTD 13-14. A promise is still a "contract" even when a party has complete "discretion" to "decide the nature or extent of his performance." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1121 n.2 (10th Cir. 2010); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 722 n.3 (1st Cir. 1999). The MBE program would still be a contract even if the Defendants had the "discretion to void and disqualify entries." *Fearless*, 103 F.4th at 770 & 775. Owners A and B would still have a "chance to win [a certification] and obtain benefits in exchange for [their] submission." *Id.*; *ABA*, 2026 WL 161596, at *6. And successful applications would still "en[d] in the formation of a contractual relationship," since Defendants would take their payment of the fee in exchange for the MBE certificate. *Fearless*, 103 F.4th at 776 (cleaned up). So the certification is a contract—"discretion" or no discretion. *Michelson*, 167 F.3d at 722 n.3; *Fearless*, 103 F.4th at 776.

**2.** The Council's next argument—that the certification isn't supported by "consideration," NMSDC-MTD 13-14—fails for the same core reasons: It impermissibly contradicts the complaint and misstates the law. As the complaint makes clear, the certification "charges a yearly fee in exchange" for a host of benefits, including "exclusive data, coaching, connections, and more." Verif.-Compl. ¶¶30-36, ¶53. Under basic contract law, those fees are consideration, regardless of whether they fully compensate Defendants for the value of the benefits that Defendants give in return. *ABA*, 2026 WL 161596, at *6; *Barfield v. Commerce Bank*, 484 F.3d 1276, 1279 (10th Cir. 2007); *Rest. (2d) Contracts* §71.

**3.** Defendants also wrongly dismiss the exclusive "downstream contract opportunities" that their MBE program provides, which independently trigger §1981. *Cf.* NMSDC-MTD 15. Section 1981 applies when "a party discriminatorily uses its authority" to bar someone "from securing a contract with a third party." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002); *Jarmon v. Pac. Rail Servs.*, 2007 WL 678644, at *3 (D. Colo. Mar. 1). And that's what Defendants are doing: They're blocking Owners A and B from "contract opportunities," Verif.-Compl. ¶55, with Defendants' "corporate members"—all of whom are third parties that "want to contract," ¶¶35-36, ¶12. Section 1981 "squarely" bars that discrimination too. *Daniels v. Pipefitters' Ass'n Loc. Union No. 597*, 945 F.2d 906, 914-15 (7th Cir. 1991); *Watson v. Fraternal Ord. of Eagles*, 915 F.2d 235, 243 (6th Cir. 1990).

### B. Mountain Plains is liable under §1981.

The complaint adequately alleges that Mountain Plains is violating §1981 by blocking Owner A from the MBE program because of race. The Court cannot credit Mountain Plains' contrary arguments because they contradict the complaint. *Cf.* MP-MTD 14-15. And even if those arguments were true—and Mountain Plains is merely an "intermediary that facilitates" MBE certifications, MP-MTD 15—Mountain Plains would still be liable because "intermediar[ies]" fall "squarely" in §1981's scope, *Daniels*, 945 F.2d at 914-15.

**1.** The complaint adequately alleges that Mountain Plains is violating §1981. *Cf.* MP-MTD 14-15. As all agree, the complaint need only allege that Mountain Plains "prevented" Owners A and B from "enter[ing] into contractual relationships" because of race. *Domino's Pizza*, 546 U.S. at 476; MP-MTD 12; Verif.-Compl. ¶54. It does. The complaint alleges that Owner A tried to apply for the MBE certification "through Mountain Plains' website," but Mountain Plains "blocked him from the program" because of race. Verif.-Compl. ¶¶40-41, ¶16(A)-(B), ¶18. And the complaint adds that Owner A's future applications "must be approved" by Mountain Plains, who will enforce the same race-based criteria that blocked him in the past. ¶16(B) (cleaned up); ¶¶26-29. That "categorical refusal to contract" is "'a classic violation of §1981.'" *ABA*, 2026 WL 161596, at *6. And Mountain Plains cannot ask the Court "to accept [its] characterizations" of the complaint. *Id.* at *7; *cf.* MP-MTD 14-15.

**2.** In any event, Mountain Plains would be violating §1981 even if it "does not control the contractual terms of the MBE certification program." MP-MTD 12 (cleaned up). As even Mountain Plains admits, §1981 applies if "a party discriminatorily uses its authority" to bar someone from "securing a contract with a third party." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002); *see* MP-MTD 13. That's what Mountain Plains is doing. As the complaint alleges and Mountain Plains concedes, Mountain Plains is "executing" the Council's race-based "standards at the local level," MP-MTD 12, so it at least bars Owner A from "securing a contract with a third party"—*i.e.*, the National Council, *Harris*, 300 F.3d at 1197; Verif.-Compl. ¶17, ¶¶20-21, ¶25. Mountain Plains had the "authority" to take those steps. *Harris*, 300 F.3d at 1197; Verif.-Compl. ¶15(B), ¶15(C), ¶17(E), ¶29. And it "actually exercised" that authority because it blocked—and continues to block—Owner A from the program on account of race. *Harris*, 300 F.3d at 1197; Verif.-Compl. ¶¶40-41. That alleged conduct "falls squarely within" §1981. *Daniels*, 945 F.2d at 914-15; *cf.* MP-MTD 15.

## C. The First Amendment does not immunize Defendants' discriminatory conduct.

Last (and certainly least) is Defendants' First Amendment argument. *See Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 n.5 (1968) (calling a First Amendment attack on federal antidiscrimination law "patently frivolous"). This argument is badly wrong. And at this stage, it is fatally premature.

**1.** The Alliance's claim does not implicate the First Amendment. *Cf.* MP-MTD 9-11; NMSDC-MTD 10-11. The First Amendment does not protect pure "conduct." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006). And the Supreme Court has already held that "§1981" is "a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993); *Runyon v. McCrary*, 427 U.S. 160, 175-76 (1976); *R.A.V. v. St. Paul*, 505 U.S. 377, 389-90 (1992). Though §1981 sometimes burdens speech—by, for example, requiring a company to remove a "Whites Only" sign from the door—that "hardly means that the law should be analyzed as one regulating the [contractor's] speech rather than conduct." *FAIR*, 547 U.S. at 62; *accord R.A.V.*, 505 U.S. at 389-90. After all, §1981 does not bar businesses from "advocating [for] race discrimination." *Fearless*, 103 F.4th at 778. It bans "the very act of discriminating on the basis of race" in contracting—an act "the Supreme Court has clearly held that the First Amendment does *not* protect." *Id.* at 777-79; *see also R.A.V.*, 505 U.S. at 390.

Defendants cannot sidestep that conclusion by framing their discriminatory contracting as speech. *Cf.* MP-MTD 8-10; NMSDC-MTD 10-12. To start, Defendants aren't engaged in "'pure speech,'" like creating a website, conducting a beauty pageant, or running a parade. *Fearless*, 103 F.4th at 778-79. And they aren't even "subsidiz[ing] speech": Their MBE certifications—the contracts the Alliance challenges—help commercial businesses get more commercial business. *Id.* at 779 n.7 (distinguishing *Coral Ridge*); *cf.* MP-MTD 10; NMSDC-MTD 11-12. Instead, Defendants are flatly refusing to contract with certain races and then claiming that the "very act of discrimination itself" is speech. *Fearless*, 103 F.4th at 779. But a long line of cases—including the compelled-speech cases that Defendants cite—reject that very argument. *Id.* at 778-79 & n.7 (discussing *303 Creative* and *Hurley*).

So, too, if Defendants reframe their discrimination as expressive conduct or association. *Cf.* NMSDC-MTD 10-12; MP-MTD 8-9. Section 1981 doesn't burden the "First Amendment right to engage in association" because racial discrimination "has never been accorded affirmative constitutional protection." *Runyon*, 427 U.S. at 175-76 (cleaned up); *Norwood v. Harrison*, 413 U.S. 455, 469-70 (1973). And §1981 doesn't regulate expressive conduct because racial discrimination is pure "conduct," *R.A.V.*, 505 U.S. at 390, that isn't "inherently expressive," *FAIR*, 547 U.S. at 66; Volokh, *The First Amendment and Refusals to Deal*, 54 U. Pac. L. Rev. 732, 733 (2023). Defendants can't transform that conduct into expression by adding speech that explains the intended "message." NMSDC-MTD 10-11; MP-MTD 9. Conduct that needs speech to explain its message isn't "expressive conduct" at all. *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 174 F.4th 1235, 1248 (10th Cir. 2026); *FAIR*, 547 U.S. at 66. If Defendants' bare discrimination were expressive, then the Constitution would protect "*every* act of race discrimination, no matter at whom it was directed"—a result that "risks sowing the seeds of antidiscrimination law's demise." *Fearless*, 103 F.4th at 779.

Even if Defendants' discrimination were expressive, §1981 could still constitutionally regulate it. At most, Defendants' discrimination is "'expressive conduct,'" NMSDC-MTD 11, so *O'Brien*'s "relatively lenient" intermediate-scrutiny test applies, *Lichtenstein v. Hargett*, 83 F.4th 575, 584 (6th Cir. 2023) (discussing *United States v. O'Brien*, 391 U.S. 367 (1968)). That test "does not appear anywhere" in Defendants' briefs, however, so they "forfeited" any argument that §1981 fails that standard. *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1351-52 (10th Cir. 2017). And §1981 would easily pass intermediate scrutiny, since the law furthers a "substantial" federal interest that the government couldn't promote "as 'effectively'" without §1981's "ban." *Lichtenstein*, 83 F.4th at 584; *e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623-29 (1984). In fact, §1981 would satisfy even strict scrutiny because the

government has a "fundamental, overriding interest in eradicating racial discrimination," which "cannot be accommodated" by allowing discrimination whenever a defendant professes an ideological commitment to it. *Bob Jones Univ. v. United States*, 461 U.S. 574, 603-04 (1983).

Constitutional avoidance doesn't help Defendants either. *Cf.* MP-MTD 11. To invoke that canon, Defendants must show both that §1981 is ambiguous, *Nielsen v. Preap*, 586 U.S. 392, 419 (2019), and that their reading of the law avoids "grav[e]" constitutional doubts, *Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998). They fail at both steps. Section 1981 is not ambiguous; its clear terms ban racial discrimination in all kinds of contracts by all kinds of defendants, with no exceptions. *E.g.*, *Founders First*, 2024 WL 3625684, at *1-5 (applying §1981 to grants by a nonprofit). And §1981 regulates either pure conduct or at least passes intermediate scrutiny, so there's "no serious doubt that the Constitution" supports it. *See Reno v. Flores*, 507 U.S. 292, 314 n.9 (1993); *cf.* MP-MTD 11. Defendants' "weak statutory argument" and "weak constitutional argument" cannot "add up to a strong constitutional avoidance argument." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013); *see Doe v. Kamehameha Schs.*, 295 F. Supp. 2d 1141, 1162 n.18 (D. Haw. 2003) (rejecting the same "First Amendment" argument against §1981).

**2.** Even if Defendants' First Amendment argument had merit, it is premature. Under Rule 5.1, a party who "draw[s] into question the constitutionality of a federal … statute must promptly" notify the U.S. Attorney General. Fed. R. Civ. P. 5.1(a)(1)-(2); *Okla. ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1215 (10th Cir. 2008). If that party refuses, the Court "must … certify" the constitutional challenge itself and give the United States at least 60 days to intervene. Fed. R. Civ. P. 5.1(b)-(c); *Pope*, 516 F.3d at 1215. Until that period expires, the Court "may reject the constitutional challenge," but it cannot "enter a final judgment holding the statute unconstitutional." Fed. R. Civ. P. 5.1(c); *Pyle v. Woods*, 874 F.3d 1257, 1265 (10th Cir. 2017).

Defendants are "drawing" §1981's constitutionality "into question," so they must notify the United States and give it 60 days to intervene. Fed. R. Civ. P. 5.1(a). A federal law is "drawn in question"—and so falls in Rule 5.1's ambit—whenever a defendant "denie[s]" its "constitutionality" and that "denial forms the subject of direct inquiry in the case." *U.S. ex rel. Champion Lumber Co. v. Fisher*, 227 U.S. 445, 451 (1913) (collecting cases). Defendants' constitutional arguments do both, so Rule 5.1 applies. And that rule applies even though Defendants are raising an as-applied "First Amendment" defense "in response to [the Alliance's] enforcement action." *Pope*, 516 F.3d at 1215; *ABA*, 2026 WL 161596, at *10 (collecting cases). So the Court cannot accept Defendants' as-applied "challenge" to §1981 because they have not yet complied with Rule 5.1. *Giannavola v. Lee*, 2025 WL 1932020, at *6 (W.D.N.Y. July 14); *ABA*, 2026 WL 161596, at *10.

At a minimum, Defendants' First Amendment defense is an affirmative defense, and courts generally cannot "decid[e] an affirmative defense at the Rule 12(b)(6) stage." *ABA*, 2026 WL 161596, at *9. That rule "applies with full force to a First Amendment defense." *Id.* (collecting cases). So the Court can credit this defense only if the Alliance's complaint "admits all the elements of [that] defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *Siegel v. Zoominfo Techs.*, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22). It does not.

In fact, the complaint refutes all the elements of this defense—in allegations that, at this stage, must be taken as true. To prove the MBE program is expressive, Defendants must show that they sought to "'convey a particularized message'" that the public would understand. *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 174 F.4th 1235, 1244-45 (10th Cir. 2026). But the complaint doesn't allege—much less admit—that Defendants had a "subjective intent" to communicate a message when they barred non-minorities from the MBE program. *Jones v. Schneiderman*, 974 F. Supp. 2d 322, 333 (S.D.N.Y. 2013); *7241 W. 100th Place Corp. v. Bridgeview*, 2014 WL 517961, at *3 (N.D. Ill. Feb. 6). It alleges the opposite. *E.g.*, Verif.-Compl. ¶61(A)-(D). Nor does the complaint establish "that onlookers

would have readily understood" the MBE program's race-based message. *Tagami v. Chicago*, 875 F.3d 375, 378 (7th Cir. 2017); *Bruni v. Pittsburgh*, 824 F.3d 353, 371-73 (3d Cir. 2016). Again, the complaint alleges the opposite. Verif.-Compl. ¶61(A), (D). So Defendants' First Amendment defense cannot succeed at "the Rule 12(b)(6) stage." *ABA*, 2026 WL 161596, at *9.

## CONCLUSION

This Court should deny Defendants' motions to dismiss the amended complaint.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Joshua A. Ney*
Joshua A. Ney
KS Bar No. 24077
KN LAW GROUP
15050 W. 138th St., Unit 4493
Olathe, KS 66063
T: (913) 303-0639
F: (785) 670-8446
josh@knlawgroup.com

*/s/ Cameron T. Norris*
Thomas R. McCarthy*
(Va. Bar No. 47154)
Cameron T. Norris*
(Va. Bar No. 91624)
R. Gabriel Anderson
(TX Bar No. 24129302)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com

**pro hac vice*

*Attorneys for American Alliance for Equal Rights*

## CERTIFICATE OF SERVICE

On August 12, 2026, I e-filed this opposition with the Court, which emailed everyone requiring service.

*/s/Joshua A. Ney*